UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ECO-SITE, LLC, et al., | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:17-cv-2880 SNLJ |
| | ) |
| THE CITY OF UNIVERSITY CITY, | ) |
| MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiffs brings this four-count lawsuit claiming that defendants wrongfully denied their request for a zoning variance with respect to a proposed telecommunications tower. The defendants have filed three separate motions to dismiss (#22, #24, #26). The motions have been fully briefed and are ripe for disposition.

**I.  Factual Background**

Plaintiffs sought to construct a telecommunications tower in the back parking lot of a Schnucks grocery store, across from a dog park, in University City, Missouri. The selected location was not in compliance with the City's requirement that the tower be 200 feet from a street or property line. As such, the plaintiffs sought a variance of the setback requirement to allow the tower to be built 99 feet from a street and 159 feet from a property line. The

1

tower itself was to be 80 feet tall, so, in the event the tower fell sideways[1], it would hit neither the street nor the neighboring property line.

Non-party T-Mobile Central LLC ("T-Mobile") engaged plaintiff Eco-Site to locate, build, and operate the proposed tower for use by T-Mobile to provide wireless telecommunications in University City. Eco-Site then retained plaintiff Cellective, Inc., a site acquisition company, to assist in obtaining permits for the potential tower site. The property at issue in this case is owned by non-party USR-Desco University Square, LLC. Non-party The Desco Group, Inc. is authorized to act on behalf of the property owner.

Plaintiffs EcoSite and Cellective applied for the above-described variance of the City's zoning regulations with the defendant Board of Adjustment for the City. The Property Owner vested plaintiffs with complete authority to pursue that variance application. The defendant Board held a hearing regarding the variance application. Plaintiffs submitted that the selected site was in an ideal location, and that "because of the floodplain limitations and the impracticality of locating the Proposed Tower at the entrance of the store, the only viable location is on the Proposed Site with the requested variances." (#19 at ¶ 36(iii).)

The Board rejected the plaintiffs' application and stated that "no evidence was presented to support a conclusion that the condition of not being able to erect the proposed Tower was not created by actions of the Petitioner."

---

[1] Plaintiffs opine that these towers are now designed so that, if they collapse, they collapse in on themselves and not to one side.

Plaintiffs claim that the defendants' decision was arbitrary and capricious and in violation of state and federal law. They filed this lawsuit with the following four counts:

- Count I --- Action for injunction and writ of mandamus pursuant to the Federal Telecommunications Act of 1996 ("TCA").
- Count II --- Action for injunction and writ of mandamus pursuant to the Missouri Uniform Wireless Communications Infrastructure Deployment Act.
- Count III --- Action for declaratory relief under the Federal Declaratory Judgment Act, 29 U.S.C. §§ 2201-2202, that defendants had violated TCA and state law.
- Count IV --- Petition for writ of certiorari pursuant to § 89.110 RSMo.

The defendants have filed three motions to dismiss. The first motion contends that the Court lacks jurisdiction over Counts II, III, and IV (#22). The second motion argues that all the counts fail to state a claim under Federal Rule of Civil Procedure 12(b)(6) (#24). Finally, defendants move to dismiss for plaintiffs' failure to join an indispensable party --- the property owner (#26).

## II. Failure to Join Indispensable Party (#26)

Defendants argue that plaintiffs were required to name the property owner as a party to this action. Plaintiffs have amended their complaint once to address that the property owner has granted EcoSite and Cellective with authority to pursue the variance application at the heart of this lawsuit. Defendants contend that such pleading falls short and that the property owner remains indispensable to this action.

An indispensable party is one with an interest in the controversy of "such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *I.C.C. v. Blue Diamond Products Co.*, 192 F.2d 43, 46 (8th Cir. 1951) (internal quotation omitted). "Federal Rule of Civil Procedure 12(b)(7) permits dismissal of a complaint for failure to join a party under Rule 19, although courts are generally reluctant to grant motions to dismiss of this type." *Fort Yates Pub. Sch. Dist. No. 4 v. Murphy ex rel. C.M.B.*, 786 F.3d 662, 671 (8th Cir. 2015) (internal quotations omitted).

> Broadly speaking, Rule 19 requires the joinder of parties necessary for the fair and complete resolution of the case; when joinder of such a party is not feasible, however, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."

*Id.* (quoting Fed. R. Civ. P. 19(b)).

Defendants moved to dismiss the original complaint because it failed to include the property owner as a party. Defendants contend that § 67.5096.2(1) RSMo requires the property owner's consent to make a lawful zoning decision, and that any relief would be moot or cannot be granted if the owner does not consent (either initially or at a time of decision and relief). Plaintiffs responded to the first motion to dismiss by amending their complaint, alleging that the "Property Owner has vested EcoSite and Cellective with complete authority to pursue the Variance Application" (#19 at ¶32). Defendants argue that such an allegation does not cure plaintiffs' failure to include the property owner as a party because the allegation is merely a legal conclusion that should be disregarded. *See Ashcroft*

4

*v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 544 (2007). Further, defendants argue that that plaintiffs' other allegations and attachments to the complaint contradict that plaintiffs are vested with authority to pursue the variance application.

     Plaintiffs dispute that Missouri or federal law require joinder of the property owner. They rely on TCA's grant of broad standing to "any person adversely affected by any final action or failure to act by a state or local government." 47 U.S.C. §332(C)(7)(b)(v). Further, plaintiffs cite to cases situated similarly to this one, in which the property owner was not made a party to the lawsuit regarding a denied variance application. *Sprint Spectrum, L.P. v. Platte County, Mo.*, 578 F.3d 727, 729 (8th Cir. 2009) (property owned by a church); *Florida RSA #8, LLC v. City of Chesterfield, Mo.*, 416 F. Supp. 2d 725, 730 (E.D. Mo. 2006) (property owned by hotel and leased to telecommunications company); *USCOC of Greater Missouri, LLC v. City of Ferguson, Mo.*, 4:07-CV-1489(JCH), 2007 WL 4218978, at *1 (E.D. Mo. Nov. 29, 2007) (telecommunications company leased property from owner). Indeed, the Board did not raise the issue of the property owner's absence when EcoSite's application was submitted, at the hearing, or in the Board's written decision.

     Defendants cite to treatises stating that "to apply or petition zoning boards for…variances…one must have title or a clear legal interest in land…" and "a variance exempts a landowner from the strict application of the requirements of a zoning regulation." 8A McQuillin Municipal Corporations § 25:280 (3d ed.); §12.6 Variance, 1 Mo. Prac., Methods of Prac.: Transact. Guide §12.6 (4th ed). Moreover, defendants express confusion

about the status or legitimacy of plaintiffs' authority. Plaintiffs allege the following facts regarding the property owner's grant of authorization:

- USR-Desco University Square, LLC is the current owner of the property.
- USR-Desco University Square, LLC was formerly known as MCW-RD University Square, LLC.
- Non-party The Desco Group, Inc. is authorized to act on behalf of the property owner.
- Eco-Site and USR-Desco University Square, LLC have executed a Lease to allow Eco-Site the right to lease certain portions of the property for placement of a telecommunications tower.
- Eco-Site retained Cellective to assist in obtaining permits for the tower.
- The property owner expressly granted permission for Cellective to submit an application for variances for the development of the proposed tower on the property.

Although defendants express confusion about the status of Eco-Site's authority to seek a variance for the property, it appears clear that the Missouri statute's requirement has been met. Plaintiffs have adequately alleged that they received authority from the property owner and that they presented that authority to the defendants along with their application for a variance. Defendants counter that although plaintiffs allege the property owner gave them permission to apply for a variance, that such permission could be withdrawn at any time, and thus plaintiffs would cease to have a "legal interest" in the land. As noted,

defendants also cite § 67.5096.2(1) RSMo, under which plaintiffs brought their Count II. That statute states that

> Any applicant that proposes to construct a new wireless support structure [who seeks a zoning variance] … shall … (1) Submit the necessary copies and attachments of the application to the appropriate authority. Each application shall include a copy of a lease, letter of authorization or other agreement from the property owner evidencing applicant's right to pursue the application….

§ 67.5096.2(1) RSMo. The statute, which requires that the variance applicant to show its "right to pursue the application" as a lessee or otherwise authorized entity, does not support defendants' contention that the property owner itself must join in a challenge to the Board's decision. Indeed, as suggested by the treatises upon which the defendants rely, the statute requires that the zoning applicant --- plaintiffs here --- demonstrate a clear legal interest in the property. That is what they have done. Plaintiffs attached a letter from The Desco Group stating that Cellective Solutions, LLC had been granted permission to apply for the variance. To the extent the plaintiffs could somehow lose their legal interest in the property, it follows that plaintiffs would no longer have any interest in pursuing this lawsuit, and they would dismiss their case as a result. To the extent plaintiffs retain their right to use of the property, this lawsuit does not affect the legal relationship between plaintiffs and property owner. Plaintiffs ask this Court only to address their Variance Application with the Board, and plaintiffs' claims may be resolved without the involvement of the property owner.

The motion to dismiss for failure to join an indispensable party will be denied.

## III. Failure to State a Claim (#24)

Next, the Court addresses defendants' motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content. . . allows the court to draw the reasonable inference that the defendants is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678.

The Court will address each Count in turn.

### A. Count I – Injunction and writ of mandamus pursuant to TCA

The TCA grants local zoning boards authority "over decisions regarding the placement, construction, and modification of personal wireless service facilities," subject to some limitations. 47 U.S.C. § 332(c)(7)(A). One such limitation is that a decision like the Board's --- denying permission to construct a tower --- must "be in writing and supported by substantial evidence contained in a written record." *Id.* § 332(c)(7)(B)(iii).

Defendants make several arguments in an effort to show that the Board's decision was supported by substantial evidence. Defendants cite to the fact that the property owner built a store on the property, that plaintiffs cannot show unnecessary hardship, and that adjacent properties would be affected. None of defendants' arguments, however, justifies dismissal of plaintiffs' complaint at this early stage. The cases relied upon by defendant, for example, pertain to summary judgment --- not motions to dismiss. *See Florida RSA #8, LLC v. City of Chesterfield, Mo.*, 416 F. Supp. 2d 725, 727 (E.D. Mo. 2006); *U.S. Cellular Tel. of Greater Tulsa L.L.C. v. City of Broken Arrow, Oklahoma*, 340 F.3d 1122, 1123 (10th Cir. 2003).

**B. Count II --- Injunction and writ of mandamus pursuant to Siting Act**

Count II asserts a claim for violations of Missouri's Uniform Wireless Communications Infrastructure Deployment Act ("Siting Act"). Specifically, plaintiffs claim the defendants Board violated three provisions of the act which provide that authorities like defendants shall not

> (1) [E]valuate an applicant's business decisions with respect to its designed service, customer demand for service, or quality of its service to or from a particular area or site;
>
> (2) Evaluate an application based on the availability of other potential locations for the placement of wireless support structures; …[or]
>
> (16) Impose any requirements or obligations regarding the presentation or appearance of facilities.

§ 67.5094 RSMo. Defendants argue that the Siting Act's prohibitions are inapplicable to applications for new wireless structures that violate a city's zoning regulations. In support,

defendants cite the Siting Act's provision "any applicant that proposes to construct a new wireless support structure…shall…comply with applicable local ordinances concerning land use and the appropriate permitting processes." § 67.5096.2 RSMo. Because the proposed tower would not comply with local ordinances, defendants say, the statute does not apply.

But plaintiffs argue that, although the Act allows local authorities to "continue to exercise zoning, land use, planning, and permitting authority," they must do so "subject to the provisions of [the Siting Act], including without limitation section 67.5094." § 67.5096.1 RSMo. Thus plaintiffs suggest that, even when considering a request for a variance, the defendants must comply with § 67.5094 RSMo.

Neither party cites to any caselaw interpreting these provisions. The plain language of the Act requires the defendants to exercise its zoning authority subject to the Siting Act, and the Act specifically invokes § 67.5094, which contains the list of prohibited acts plaintiff says defendants violated. The defendants' motion fails on this point.

Next, defendants argue that plaintiffs did not comply with the Siting Act because they did not attach to the application a "letter of authorization or other agreement from the property owner evidencing applicant's right to pursue the application." § 67.5092.2(1) RSMo. However, plaintiffs did attach a letter from The Desco Group, which plaintiffs allege is authorized to act on behalf of the property owner, stating that Cellective Solutions, LLC is granted permission to apply for a Conditional Use Permit, Variance, and Building Permit. Defendants, apparently dissatisfied with the chain of authorization, say such a letter was not enough. The Court disagrees. The Amended Complaint sufficiently makes the connections between the entities involved in the application process.

10

Third, defendants argue that plaintiffs have not alleged a proper as-applied challenge under the Siting Act. Plaintiffs allege that

> 66. The Setback Requirement imposes a requirement regarding the presentation and appearance of telecommunications towers, and in particular, is intended to reduce the visibility or to provide screening of the tower.
>
> 67. The Missouri Siting Act requires that regulations regarding appearances and screening be reasonable. The Setback Requirement is not proportional to the height of a proposed structure or the surrounding structures, making it an unreasonable and arbitrary appearance regulation.

(#19 at ¶¶ 66, 67.) Defendants argue that plaintiffs fail to state an as-applied violation of state law because plaintiffs cannot show the variances requested were "presentation or appearance" requirements that were "unreasonable" in light of existing law. In support, defendants provide examples of cases where requirements for setbacks of greater than 99 feet from neighboring or other property have been held reasonable. None of defendant's authority involve the Siting Act, however, and none of them call for dismissal of plaintiffs' complaint at this stage.

Finally, defendants argue that § 67.5094(16) does not apply to setbacks because setbacks are a matter of public safety and are not merely requirements "regarding the presentation or appearance of facilities." Plaintiffs have adequately pleaded that the defendant's refusal to grant a variance for their proposed tower violates the Siting Act because it was arbitrary and unreasonable and related to "presentation or appearance" --- not public safety. Defendant's final argument with respect to Count II is without merit.

### C. Count III --- Action for declaratory relief under the DJA

Plaintiff's Count III seeks relief under the Federal Declaratory Judgment Act, 29 U.S.C. §§ 2201-2202. In particular, Count III seeks a declaration that the defendant's setback requirement is unlawful as applied to the denial of plaintiffs' variance application under the TCA and under the Siting Act. It also seeks a declaration that plaintiffs have the right to a variance from the setback requirement.

Defendants argue that a declaratory judgment is a remedy and not a claim and thus it cannot be asserted in a stand-alone count. As plaintiffs point out, however, Missouri law contemplates that a plaintiff may seek relief from a zoning restriction through a declaratory judgment action. *See* § 527.010 and § 527.020 RSMo. Plaintiffs clearly seek the declaratory relief pursuant to the TCA and the Missouri Siting Act. Although the declatatory relief might have been included in plaintiffs' Counts I and II, the claim for relief was properly tied to substantive law. The motion to dismiss is denied on this point.

### D. Count IV

Defendants incorporate their argument from their motion to dismiss for lack of subject matter into their motion to dismiss for failure to state a claim for this Count. Thus, Count IV will be discussed in Section IV.

### E. Cellective as proper plaintiff

Defendants contend that plaintiff Cellective's claims should be dismissed because it alleges no injury and has no valid claim. Cellective's role according to the complaint was to assist Eco-Site in seeking permits for a proposed tower site. Eco-Site, not Cellective, signed the appliance for variance that is at the heart of this case. Thus, defendants argue that

Cellective completed everything it was supposed to do regarding the tower, has no injury, and has no valid claims. Cellective retorts that it was granted express authority to apply for variances needed to erect the Proposed Tower on the Property and that it joined in the variance applications. Indeed, although Eco-Site appears to have signed the Application, Cellective is listed as the "Appellant." It appears that Cellective, as the "appellant" on the Application, has an interest in this litigation just as Eco-Site does. The motion will be denied.

## IV. Subject Matter Jurisdiction

Defendants separately move for dismissal of certain of plaintiffs' counts based on lack of subject matter jurisdiction.

### A. Count III

Defendants seek dismissal of Count III for lack of jurisdiction based on the same argument is raises in it motion to dismiss for failure to state a claim. The Court denies the motion with respect to Count III for the same reasons addressed above.

### B. Counts II and IV

Defendants argue that this federal court lacks authority and jurisdiction to issue an injunction and writ of mandamus pursuant to state law. Plaintiffs insist that the Court has supplemental jurisdiction over Counts II and IV. 28 U.S.C. § 1367. Defendants appear to agree that supplemental jurisdiction exists so long as the Court does not dismiss plaintiffs' Count I, which is based on the federal TCA. Defendants appears to suggest, however, that this Court does not have authority or jurisdiction to issue an order and writ to City officials directing them to perform certain acts and prohibiting them from other actions.

Notably, defendants do not appear to seriously contest this Court's jurisdiction over the plaintiffs' TCA claims and the injunctive and mandamus relief requested. Defendants cite to unpublished opinions from other districts declining to order state prison officials or others to take some action in the absence of authority to do so. *See, e.g.*, *Everett v. Foradora*, No. 08-1098, 2008 WL 4155084, at *2 (W.D. Pa. Sept. 8, 2008). Here, plaintiff relies on the authority of state statutes, which specifically state that

> A party aggrieved by the final action of an authority, either by its affirmatively denying an application under the provisions of this section or by its inaction, may bring an action for review in any court of competent jurisdiction within this state.

§ 67.5096.6 RSMo; *see also* § 89.110 RSMo ("Upon the presentation of such petition the court may allow a writ of certiorari directed to the board of adjustment to review such decision of the board of adjustment…"). *See, e.g.*, *Voicestream PCS II Corp. v. City of St. Louis, MO*, 4:04CV732 FRB, 2005 WL 6122137, at *6 (E.D. Mo. Aug. 3, 2005) (permitting supplemental jurisdiction over § 89.110 action based on related TCA claim).

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motions to dismiss (#22, #24, #26) are DENIED.

Dated this 2nd day of November, 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE