**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ECO-SITE, LLC, et al.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:17-cv-2880 SNLJ** |
| | ) | |
| **THE CITY OF UNIVERSITY CITY,** | ) | |
| **MISSOURI, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

Plaintiffs bring this four-count lawsuit claiming defendants wrongfully denied their request for zoning variances with respect to a proposed telecommunications tower. The parties have filed cross-motions for summary judgment on the administrative record. (#55, #59.) The motions have been fully briefed, and the parties filed supplemental briefing at the request of the Court. For the reasons described below, the Court will grant plaintiffs' motion and deny defendants' motion.

## I.    Factual Background

The following facts are undisputed except where indicated. The defendant City of University City, Missouri (the "City") has a zoning code that requires any telecommunications tower be located at least 200 feet from a street or property line. Plaintiff Cellective Solutions, LLC filed an application to the City's Board of Adjustment for a variance from the 200-foot setback requirement so that a telecommunications tower could be constructed in the back parking lot of a Schnucks grocery store, zoned as a General

Commercial ("GC") district. The property's owner is listed as MC RD University City Square, LLC c/o Desco Group. The tower would be 80 feet tall. The application stated that a variance was needed because the only area on the property that would comply with the 200-foot set back requirement would be in front of the store's entrance. Cellective proposed a site that would be 99 feet from the street and 140 feet from the nearest property line. The application was signed as "representing" plaintiff Eco-Site, LLC and attached site drawings with Eco-Site's logo. The attached site drawings list the Developer as Eco-Site and the Contact Person as Cellective Solutions. The proposed tower's location in the back parking lot of the grocery store would require the removal of a few parking spaces to allow for the tower and landscaping.

The Board of Adjustment held a public hearing on the matter of the requested variance. Representatives for plaintiffs appeared and presented the reason for the requested variance, and members of the public who lived nearby appeared and spoke their opposition to the variance. The Board voted not to approve the variance. The Board's written denial contained the following findings and conclusions.

FINDINGS

11. No evidence was presented to support a conclusion that the condition of not being able to erect the proposed Tower was not created by actions of the Petitioner.

12. Although less desirable, the Petitioner admits that there are alternative locations on the property where a Tower could be erected without a variance.

13. The bulk of the Petitioner's property is covered by buildings owned by the Petitioner.

14. The Board finds the Petitioner's own actions of using portions of the lot, located outside of the floodplain, created the Petitioner's condition.

CONCLUSIONS [. . .]

a) Petitioner did not establish a need for relief due to the unique condition of its Property and which is not ordinarily found in the same zoning district;

b) Petitioner's alleged condition was created by the Petitioner's actions;

c) Strict application of Section 400.1400(C)(3) of the Zoning Code will not result in unnecessary hardship upon the property owner represented in the application;

d) Both variances sought by Petitioner will adversely affect the adjacent properties or public health, safety, order, convenience or general welfare of the City of University City, and

e) Granting the variances desired will violate the general spirit and intent of the Zoning Code, and should therefore be denied.

Plaintiffs filed this lawsuit, claiming that the defendants' decision was arbitrary and capricious and in violation of state and federal law. The complaint includes the following four counts:

- Count I --- Action for injunction and writ of mandamus pursuant to the Federal Telecommunications Act of 1996 ("TCA").

- Count II --- Action for injunction and writ of mandamus pursuant to the Missouri Siting Act.

- Count III --- Action for declaratory relief under the Federal Declaratory Judgment Act, 29 U.S.C. §§ 2201-2202, that defendants had violated TCA and state law.

- Count IV --- Petition for writ of certiorari pursuant to § 89.110 RSMo.

The parties have filed cross-motions for summary judgment. The State of Missouri was allowed to intervene to defend the constitutionality of the Missouri statute addressed by Count II, which defendants claim is unconstitutional.

## II. Legal Standard

The parties move for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment shall be granted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Plaintiffs' claims rest entirely on the evidence in the administrative record, which has been submitted to the Court. *See Ogawa v. City of Des Peres*, 745 S.W.2d 238, 242 (Mo. App. E.D. 1987).

## III. Discussion

Plaintiffs seek an order that (1) requires defendants to reverse their denial of Eco-Site's Application and grant the two requested variances therein, and (2) declares that strict application of the 200-foot-setback requirement is arbitrary, unreasonable, and unconstitutional as applied to Eco-Site's Application. Defendants ask the Court to grant judgment to them on all counts of the complaint.

## A. Standing and indispensable parties

Defendants first argue that plaintiffs were required to name the property owner as a party to this action or to show that they otherwise have a clear legal interest in the property. *See* 8A *McQullin Municipal Corporations* § 25:280 (3d ed.) ("To apply or petition zoning boards for…variances…one must have title or a clear legal interest in land…"). Defendants therefore argue that plaintiffs have no standing to bring this lawsuit.

However, the TCA states that "any person adversely affected by any final action or failure to act by a state or local government" may "commence an action in any court of competent jurisdiction." 47 U.S.C. §332(c)(7)(B)(v). As explained in this Court's memorandum and order denying the defendants' motion to dismiss, the Court is satisfied that the plaintiffs have standing because they qualify as persons "adversely affected by any final action…by a …local government."[1] Notably, the defendants did not base their decision to deny the variance application on plaintiffs' standing before the Board of Adjustment. Indeed, the issue of the property owner's absence was not even questioned when EcoSite's application was submitted nor at the hearing. Finally, the Decision of the Board itself states that the application was submitted "on behalf of MCW RD University City Square, LLC (c/o DESCO Group)." The DESCO Group is the property owner as

---

[1] The Court also reiterates that defendants' insistence that the property owner's presence in the lawsuit is required is refuted by the numerous other reported cases in which the property owner was not made a party to the lawsuit regarding a denied variance application. *E.g.*, *Sprint Spectrum, L.P. v. Platte County, Mo.*, 578 F.3d 727, 729 (8th Cir. 2009) (property owned by a church); *Florida RSA #8, LLC v. City of Chesterfield, Mo.*, 416 F. Supp. 2d 725, 730 (E.D. Mo. 2006) (property owned by hotel and leased to telecommunications company); *USCOC of Greater Missouri, LLC v. City of Ferguson, Mo.*, 4:07-CV-1489(JCH), 2007 WL 4218978, at *1 (E.D. Mo. Nov. 29, 2007) (telecommunications company leased property from owner).

reflected in the record.  It thus appears that the Board understood the application to have been made with the authority of the property owner.

Plaintiffs' claims may be resolved without the personal appearance of the property owner as a party in this case.

## B. Counts I and IV

Plaintiffs' Count I claims that the defendants' decision to deny the Application was not supported by substantial evidence as required by the TCA, 47 U.S.C. § 332(c)(7)(B)(iii). Count IV seeks a writ of certiorari under § 89.110 RSMo, which allows judicial review for decisions of the Board.  Plaintiffs address both counts as one in their motion for summary judgment, so the Court will address both here, as well.

The TCA's "substantial evidence" requirement "requires a reviewing court to determine whether the local authority's decision comports with applicable local law." *USCOC of Greater Missouri v. City of Ferguson, Mo.*, 583 F.3d 1035, 1042 (8th Cir. 2009) (citing *Sprint Spectrum*, 578 F.3d at 733).  This Court's review is "essentially deferential, and the party seeking to overturn a decision bears the burden of proving that it is not supported by substantial evidence." *Id.* (internal citation omitted).  The Board's decision must be affirmed if it is "supported by some substantial level of evidence (but less than a preponderance) on the record as a whole." *Id.* (quotation omitted).  The Court may "not overturn the City's decisions simply because the evidence might reasonably support a different conclusion." *Id.*

The Board here was required to follow the Missouri statute governing zoning variances.  The applicable Missouri law states that the Board of Adjustment, "in passing

6

upon appeals, where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of such ordinance," has the power to "vary or modify the application of any of the regulations or provisions of such ordinance relating to the construction…of … structures or the use of land." § 80.090.1(3) RSMo. "The burden of proving that landowners would suffer a practical difficulty or an unnecessary hardship if a zoning variance is not granted is upon the landowners." *Doorack v. Bd. of Adjustment of City of Town & Country*, 709 S.W.2d 140, 143 (Mo. App. E.D. 1986).

As indicated by the statute, the two standards that may be met to justify a variance are "practical difficulties" and "unnecessary hardship." "The 'practical difficulties' standard is a '*slightly* less rigorous' version of the 'unnecessary hardship' standard." *Antioch Cmty. Church v. Bd of Zoning Adjustment of City of Kansas City*, 543 S.W.3d 28, 37 (Mo. *banc* 2018) (emphasis in original). The "practical difficulties" standard is applied when an applicant "seeks a variance to permit deviations from restrictions which relate to a permitted use." *Id.* (internal quotation omitted). Such a variance is sometimes called a "nonuse variance."

In contrast, the "unnecessary hardship" "standard applies to use variances which allow a use of the property otherwise entirely prohibited by the ordinance." *USCOC of Greater Missouri*, 583 F.3d at 1043 n.8 (citing *Baumer v. City of Jennings*, 247 S.W.3d 105, 113 (Mo. App. E.D. 2008)) (emphasis added). Plaintiffs suggest the cell phone tower was a permitted use for the property and thus that the Board improperly used the "unnecessary hardship" standard when in fact the "practical difficulties" standard was appropriate. The record shows that the "practical difficulties" standard was mentioned at least once during

the hearing.  But the Board members frequently referred to "hardship," and the Board's decision states that "strict application of Section 400.1400(C)(3) of the Zoning Code will not result in <u>unnecessary hardship</u> upon the property owner."  (Emphasis added.)

The Board argues that the applicant did not show that a telecommunications tower was a "permitted use" on this property, and thus that the "unnecessary hardship" standard applied.  The Board concedes, however, that telecommunication towers are specifically listed in the ordinance as permitted uses in GC Districts, as long as they comply with several prerequisites, including that they are "in accordance with the provisions of Article V 'Supplementary Regulations', Section 400.1400(I)."  The "Supplementary Regulations" in Code Section 400.1400(I) set forth limits on the power density and radio frequency for telecommunications equipment, and requires special review by an approved engineer, among other requirements. Defendants argue that nothing in the record establishes that these requirements were satisfied, so the tower is not a "permitted use."  Plaintiffs describe the tower as a "conditionally permitted use" and claim that they had to obtain the variances before getting the other required permits.  It is not apparent to this Court why a "conditionally" permitted use would not qualify for a nonuse variance the same as a permitted use, particularly where, as here, the plaintiffs could not yet obtain the permits defendants say they needed.

Furthermore, as noted, a nonuse variance "authorizes deviations from restrictions which relate to a permitted use, rather than limitations on the use itself." *Matthew v. Smith*, 707 S.W.2d 411, 413 (Mo. *banc* 1986).  Plaintiffs undoubtedly sought deviation from restrictions related to a (conditionally) permitted use, and not deviation from limitations on

8

the use itself. This is especially clear because examples of nonuse variances include "variances of bulk restrictions, of area, height, density, <u>setback</u>, side line restrictions, and restrictions covering miscellaneous subjects, including the right to enlarge nonconforming uses or to alter nonconforming structures." *Id.* at 420 (emphasis added). This Court agrees with plaintiff that the setback variance request is a nonuse variance, thus the "practical difficulties" test should have been applied.

To show practical difficulties exist to justify a variance, the applicant must show it "seeks to use the property for a specific permitted use but cannot do so without conflicting with the zoning requirement as to which the applicant seeks a variance." *Antioch Community Church*, 543 S.W.3d at 38. There is no "specific definition" of the "practical difficulties" test. *Antioch Community Church*, 543 S.W.3d at 37. This lack of an exact test for "practical difficulties" "stems in part from the fact that determining what constitutes a practical difficulty is inherently fact-specific and so committed to the discretion of the zoning authority." *Id.* The Missouri Supreme Court has recently stated that certain factors, "although they are not themselves elements, but rather guidelines," can be considered when determining practical difficulties. *Id.* at 38. Those guidelines include

> (1) <u>how substantial the variation is</u> in relation to the requirement, (2) the effect, if the variance is allowed, of the increased population density thus produced on available governmental facilities (fire, water, garbage and the like), (3) whether a <u>substantial change will be produced in the character of the neighborhood</u> or a substantial detriment to adjoining properties created, (4) whether the <u>difficulty can be obviated</u> by some method, feasible for the applicant to pursue, other than a variance, and (5) whether in view of the manner in which the difficulty arose and considering all of the above factors <u>the interests of justice</u> will be served by allowing the variance.

*Antioch Cmty. Church*, 543 S.W.3d at 38-39 (quotation omitted) (emphasis added to show relevant guidelines).[2]

In addition to the guidelines identified above, local ordinances "further define the power of the Board of Adjustment to grant a variance," and must also be considered. *Id.* at 39. The City's Zoning Code § 400.2950 states that the Board shall not grant a variance unless it makes four specific written findings of facts based on the evidence. The Board must find that (1) the variance request arises from a condition unique to the property and is not created by an action of the property owner or applicant, (2) strict application of the zoning requirement will constitute "unnecessary hardship upon the property owner represented in the application,"[3] (3) the "variance requested will not adversely affect the adjacent properties or public health, safety, order, convenience or general welfare of the community," and (4) granting the variance will not violate the general spirit and intent of the zoning code. In determining whether the evidence supports the findings required by § 400.2950, the Board must also consider several other criteria, including physical surroundings, shape, and topographical conditions of the property, whether the request is based on a desire to secure greater financial return, whether the variance would be materially detrimental or injurious to neighboring property, and property values, among

---

[2] The *Antioch* court observed that the second criterion will not be applicable in all circumstances. 543 S.W.3d at 39.
[3] The Court acknowledges that this appears to call upon the stricter "unnecessary hardship" standard. This matter is addressed below.

others.  University City Zoning Code § 400.2940.  If any of the four required findings are not supported by the applicant, the Board "shall not" grant the variance. *Id.* § 400.2950.

Plaintiffs claim that the Board made a fundamental mistake by applying the unnecessary hardship standard instead of practical difficulties.  To be sure, the Board's written decision mentions only the "unnecessary hardship" test.  Moreover, the Board Members repeatedly use the word "hardship" during the hearing.  Notably, although counsel for plaintiffs cited the practical difficulties test during the hearing, the Board chairman began the hearing by reading from the Zoning Code § 400.2950's required four findings, including reference to the "unnecessary hardship" test.  None of the Board members mentioned the practical difficulties test.

The Court is mindful that the Board consists of layperson, not lawyers, and that one portion of the City's Zoning Code—the required findings—refers only to "unnecessary hardship."  However, Missouri law requires that the "practical difficulties" standard be used here, where the applicant sought a nonuse variance. *Antioch Cmty. Church*, 543 S.W.3d at 37.  Further, the practical difficulties standard is slightly less rigorous than the unnecessary hardship standard, *id.*, and thus it is possible that, had the Board considered the correct standard, it might have granted the variances.

The defendants urge this Court to hold that the variance application fails under either standard.  In one case, the Eighth Circuit affirmed rejection of a variance application, noting that, even though the plaintiff maintained the board there had applied the wrong (unnecessary hardship) standard to its variance application, that the application "was properly rejected under either standard." *USCOC of Greater Mo.*, 583 F.3d at 1043 n.8.  In

11

that case, however, the board explicitly concluded that there were "no practical difficulties" associated with zoning requirements. *Id.* at 1043. Here, there was no explicit reference to practical difficulties by the Board either in the decision or at the hearing.

The City Zoning Code and state law on these matters are hardly models of clarity, and effort should be made to harmonize them. Although the Court holds that the defendants applied the wrong standard to plaintiffs' application, the Court need not determine whether the application would have failed under the lesser standard for the reasons discussed below.

### C.    Count II

Count II seeks an injunction and a writ of mandamus under the Missouri Uniform Wireless Communications Infrastructure Deployment Act, § 67.5090 RSMo. Plaintiffs refer to that act as the "Missouri Siting Act" and allege that it serves to regulate the power of local governments related to telecommunication facility applications. Plaintiffs contend that the defendants ran afoul of the Siting Act because the Siting Act prohibits a municipality from considering certain criteria in evaluating an application related to wireless support structures. "A party aggrieved by the final action of an authority, …by its affirmatively denying an application under the provisions [of the Siting Act]…, may bring an action for review in any court of competent jurisdiction within this state." § 67.5096.6 RSMo.

Specifically, plaintiffs claim the defendant Board violated three provisions of the Act which provide that authorities like defendants shall not

> (1) [E]valuate an applicant's business decisions with respect to its designed service, customer demand for service, or quality of its service to or from a particular area or site;

12

(2) Evaluate an application based on the availability of other potential locations for the placement of wireless support structures; …[or]

(16) Impose any requirements or obligations regarding the presentation or appearance of facilities.

§ 67.5094 RSMo. Defendants argued in their motion to dismiss that the Siting Act's prohibitions are inapplicable to applications for new wireless structures that violate a city's zoning regulations. In support, defendants cite the Siting Act's provision "any applicant that proposes to construct a new wireless support structure…shall…comply with applicable local ordinances concerning land use and the appropriate permitting processes." § 67.5096.2 RSMo. Because the proposed tower would not comply with local ordinances, defendants argued, the statute does not apply. This Court denied the motion to dismiss, noting that the plain language of the Act, § 67.5096.1 RSMo, requires the defendants to exercise its zoning authority subject to the Siting Act.

### 1. Application of the Siting Act

The defendants again make the same arguments here. The Court acknowledges that the Siting Act is seemingly inconsistent. It prohibits a municipality from using certain criteria in evaluating an application for a telecommunications facility, but at once directs that the applicant "shall. . .comply with applicable local ordinances concerning land use and the appropriate permitting processes." Does this mean that the applicant shall comply with local land use ordinances even if those ordinances employ criteria that are prohibited by the statute? Unfortunately, there is no case law interpreting this relatively new statute. It has

been in effect since August 2014, and this Court appears to be the first to address the Siting Act at all.

Turning again to defendants' arguments regarding the Act's relevance here, the Act defines "application" as "a request submitted by an applicant to an authority to construct a new wireless support structure" or for substantial modification of one. § 67.5092 RSMo. Because, as defendants explain, plaintiffs' request is not for construction but for a variance, the Siting Act's prohibitions do not apply. Section 67.5096 RSMo, however, makes clear that although "[a]uthorities may continue to exercise zoning, land use, planning, and permitting authority…with regard to the siting of new wireless support structures," they must do so "subject to the provisions of…section 67.5094." Moreover, the definitions section of the Act explicitly includes municipal zoning authorities. This Court concludes that zoning authorities like the defendant Board here are subject to § 67.5094's prohibitions when reviewing applications like the plaintiffs' variance request.

## 2. Prohibited Considerations

Plaintiffs contend defendants improperly considered three of the Siting Act's prohibited considerations.

### a. Business decisions

The Siting Act prohibits a zoning authority from "evaluat[ing] an applicant's business decisions with respect to its designed service, customer demand for service, or quality of its service to or from a particular area." § 67.5094(1) RSMo. Although a Board Member asked why the tower was needed, there was no further discussion of the matter

after the questions were answered.   It does not appear that the Board evaluated the need for the tower generally.

### b.  Other potential locations for the tower

As noted, the Siting Act also prohibits an authority from "evaluating an application based on the availability of other potential locations for the placement of wireless support structures."  § 67.5094(2) RSMo.  Defendants acknowledge that the Board's decision states that "there are alternative locations on the property where a Tower could be erected without a variance." But defendants insist that the Siting Act does not prohibit the Board from considering the location of the tower within the property.  As the Board points out, zoning authorities should be permitted to consider the need for a variance by considering whether the permitted use could be made somewhere on the subject property without a variance. *See Antioch Community Church*, 543 S.W.3d at 38.

Even if that is true, however, defendants appear to ignore the substantial evidence in the hearing transcript that shows that the Board did consider other locations for the tower both within the parcel and elsewhere.  The very first question the Board asked was as follows:

> MEMBER MCFARLAND:  Can you describe other locations that were investigated?

Then, when the City's Zoning Administrator was given the opportunity to state the city's position, she stated:

> MS. RIGANTI:  …We did hear from Mr. Martin that he did consider other areas within the parcel, but we feel that there are places on the property that the pole could be located.  So the specific location is not the only location on the parcel. The

15

unnecessary hardship upon the property owner represented in the application. We do wonder if the applicant can be located somewhere else in the general commercial or industrial commercial zoning district.

…

We again, go back to were there any other locations that were considered for this particular project.

Later, a Board Member asked again:

CHAIRMAN MARENTETTE: Have you considered any of the other sites in, you know, I mean is that – was that the only site that you considered in this location?

MR. MARTIN: Yeah. In terms of the search ring that was given to us by this carrier, this is the site that was selected.

MEMBER MCFARLAND: What was that search ring?

MR. MARTIN: Yeah, the search ring that was –

MEMBER MCFARLAND: How big was the search ring?

MR. MARTIN: How big was the search ring? I'm not sure of the actual diameter of the search ring, but again, it's driven by the need for – for that search ring....

…

MS. RIGANTI: I – I would like to really press for additional information about any other general commercial zoning district within which this could have been located, because if this is unique to the zoning district, we are really focusing on the location here being problematic because the floodplain issues on the property. But there is another general commercial zoning district that this could be located.

Later, the Chairman closed the public hearing part of the meeting and moved on to discussion amongst the Board Members. The entirety of that discussion is as follows:

MEMBER BURKETT: I think it's a rather large variance. You know, I think kind of variance for discussion we talk about it

16

would be helpful to note there were four other areas considered and this was considered this was cost-effective or <u>were there really other areas considered</u>.

I haven't gotten outside of this parcel, so <u>I'd really like to know if other areas were considered</u>.

MEMBER ANDERSON:  I would have to agree with that, but I do know that there are plenty of towers that are throughout our community.  And for the most part, as far as property values, it has not affected them, and most of these homes we are already in a commercial area right now as far as this immediate – where this project is locked.

<u>What I don't understand is why this was selected, and if there is an alternative.  So I would be interested to know if that was investigated</u>.

MEMBER MCFARLAND:  I'll say it a little bit stronger.

<u>I don't think that we have heard enough to believe that this is the only place</u>, and I haven't heard a lot to overcome the City's view saying that the hardship hasn't been met.

MEMBER ANDERSON:  Right.

MEMBER MCFARLAND:  So without more information, this is a thing to be considered.

CHAIRMAN MARENTETTE:  All right.  I guess we can go ahead and vote.  If no further discussion.

(Emphasis added.)  And with that, the Board voted unanimously to deny the variance.

Defendants do not acknowledge the repeated questions from the Board nor the Board's musings about alternative locations.  Although the Court does not ascribe to the Board the comments and questions from City employee, Zoning Administrator Ms. Riganti, she pressed the Board to seek more information regarding "additional information about any other general commercial zoning district within which this could have been located."  Then,

the Board's discussion of the application focused almost entirely on whether the tower might be located somewhere else—not merely in another location on the Schnucks property. One member said she had not "heard enough to believe this is the only place," and "without more information, this is a thing to be considered." The Board then took the vote. This discussion clearly constitutes "evaluating an application based on the availability of other potential locations," which is prohibited by § 67.5094(2) RSMo.

### c. Presentation and appearance

As for the contention that the setbacks imposed an unreasonable "requirement regarding the presentation and appearance of facilities" in violation of § 67.5094(16) RSMo, the setbacks regulate distance, not appearance. Plaintiffs suggest that discussions regarding tower's location suggest that the Board was imposing appearance-related requirements, but plaintiffs offer no law to support that zoning setback requirements are in violation of this or similar statutes. This Court will not assign to the Board the content of objections made by neighbors—the neighbors are not subject to the Siting Act, and there is no evidence the Board made any requirements regarding appearance or presentation. Limited questions during the hearing on the tower's appearance do not appear to this Court to be the imposition of "unreasonable" requirements.

\*\*\*

Ultimately, the Court finds that the Board impermissibly evaluated plaintiffs' application based on the availability of other potential locations for the tower in violation of § 67.5094(2). As the result, the Court turns to the defendants' other arguments.

### 3. Constitutionality

Defendants contend that the Siting Act violates Article III, § 40 of the Missouri Constitution, which provides: "The general assembly shall not pass any local or special law... (28) granting to any corporation, association or individual any special or exclusive right, privilege or immunity." A special law "includes less than all who are similarly situated[,] but a law is not special if it applies to all of a given class alike and the classification is made on a reasonable basis." *Missouri Mun. League v. State of Missouri*, 489 S.W.3d 765, 768 (Mo. *banc* 2016) (internal quotations omitted). Furthermore, "[a] law based on open-ended characteristics is not facially special and is presumed to be constitutional." *Id.* In such cases, "[t]he burden is on the party challenging the constitutionality of the statute to show that the statutory classification is arbitrary and without a rational relationship to a legislative purpose." *Jefferson Cty. Fire Prot. Districts Ass'n v. Blunt*, 205 S.W.3d 866, 870 (Mo. *banc* 2006), holding modified on other grounds by *City of Normandy v. Greitens*, 518 S.W.3d 183 (Mo. *banc* 2017). Here, the Act is presumptively constitutional because it is based on open-ended characteristics. The class of "any person engaged in the business of providing wireless communications services or the wireless communications infrastructure," is one that other businesses may enter at any time based on the services they provide. *See City of St. Louis v. State of Missouri*, 382 S.W.3d 905, 915 (Mo. *banc* 2012) ("Because 'others may fall into the classification,' the law is not special legislation.").

Defendants misconstrue the standard for what makes a special law, arguing that the Act does not grant benefits "to other public utilities or even other businesses providing

communications services." But a law is not special merely because it confers benefits on some and not on others; rather, a law is special if it "includes less than all who are similarly situated." *Missouri Mun. League*, 489 S.W.3d at 768. Defendants do not show how the other businesses it mentions are similarly situated so as to render the Act a special law. For the same reason, the City's reliance on *Planned Indus. Expansion Authority of City of St. Louis v. Southwestern Bell Tel. Co.*, 612 S.W.2d 772 (Mo. *banc* 1981) is misplaced. That case involved a statute that singled out telecommunications companies from a class of several similarly situated companies using public rights-of-way. *Id.* at 777. There is no such singling out here.

Instead, the Act "applies to all of a given class alike and the classification is made on a reasonable basis." *Missouri Mun. League*, 489 S.W.3d at 768. The stated purpose of the Act is "to encourage and streamline the deployment of broadcast and broadband facilities and to help ensure that robust wireless radio-based communication services are available throughout Missouri." § 67.5090 RSMo. Given this purpose, it is reasonable that the law applies to the class of persons providing wireless services or infrastructure. The Act creates an open-ended class, based on a reasonable justification, and treats all members of that class the same. It does not violate Article III § 40(28).

### D. Count III

Plaintiff's Count III seeks relief under the Federal Declaratory Judgment Act, 29 U.S.C. §§ 2201-2202, and, in particular, seeks a declaration that the defendants' setback requirement is unlawful as applied to the denial of plaintiffs' variance application under the TCA and under the Siting Act. Plaintiffs' motion for summary judgment, however, seeks a

declaration that denial of their petition was improper because the Zoning Code's application to Eco-Site is arbitrary and unreasonable. Having determined that plaintiffs will prevail in their arguments under Counts I and II, this Court need not address plaintiffs' arguments here, for their requested relief is the same, and this argument collapses into the others.

## IV. Conclusion

The remedy here is unclear, where the defendant Board made the procedural mistakes of applying the wrong standard and also violating the Missouri Siting Act during its deliberations. It appears that this, too, is a matter of first impression. Defendants suggest that § 89.110 RSMo provides that this Court has the authority to remand, reverse, affirm, or modify the decision of the Board. *See also State ex rel. Klawuhn v. Bd. of Zoning Adjustment of City of St. Joseph, Mo.*, 952 S.W.2d 725, 729 (Mo. App. W.D. 1997) (remanding with instructions to the zoning board to deny a variance request). Notably, "[t]he TCA itself prescribes no particular remedy." *St. Charles Tower, Inc. v. Kurtz*, 643 F.3d 264, 271 (8th Cir. 2011) (declining to decide whether remand could be appropriate remedy for violations of the TCA's substantial evidence requirement). One court, finding that neither the TCA's "in-writing" nor the "substantial evidence" requirements were met, ordered the board to grant the permit because "remand would merely give the City a chance to find post-hoc evidence to support its denial and is not warranted." *USOC of Greater Iowa, Inc. v. City of Bellevue, Nebraska*, 279 F. Supp. 2d 1080, 1088 (D. Neb. 2003). That same court noted, however, that "remand may be appropriate in cases where the record reflects that the decision maker had a legitimate concern that was either not addressed or was not adequately addressed." *Id.*

There is no guidance whatsoever regarding the proper remedy for a violation of the Missouri Siting Act.

Plaintiffs seek an order simply ordering the Board to grant the variance. Defendants argue that the Court should find that there was substantial evidence to deny the variance request under either the practical difficulties or unnecessary hardship test and avoid remand at all. This Court concludes, however, that improper considerations regarding alternative locations were the driving force behind the Board's denial. Had those considerations not been available to the Board, the Board might have reached a different conclusion, particularly had the Board applied the appropriate, "slightly less-rigorous" practical difficulties standard.

In light of these procedural irregularities, and in accordance with the plaintiffs' prayer for relief which includes to "award such other and further relief as the Court deems just and proper," this Court will remand with instructions for the Board to consider plaintiffs' application using the practical difficulties standard and without violating the terms of the Missouri Siting Act. A separate judgment will issue.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment (#55) is DENIED.

**IT IS FURTHER ORDERED** that plaintiffs' motion for summary judgment (#59) is GRANTED in part.

Dated this 16th day of December, 2019.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE